Good morning. May it please the court. My name is Mark Hanson. I'm the court appointed counsel for Rowena Urumelog. Because of the name, I'll just refer to her as defendant because I'll trip over that the entire hearing. I will be brief, but I would like to request two minutes for rebuttal. You have a clock in front of you, and one of you got the last two years. As I'm sure you're aware, we have raised four issues on appeal, the first one being sufficiency of the evidence. The statute under which the defendant was convicted was 18 U.S.C. Section 1546A, paragraph 4. There are several paragraphs to 1546A. In this one, she was found guilty of knowingly subscribing to a material false statement in an immigration document. Now, there are elements underneath that, but they're not at issue on appeal. What is at issue with regard to sufficiency of the evidence is defendant's knowledge of the subscription to this material false statement. And the false statement appears in a petition for ailing relative form I-130 that's at page 116 and 117 of the excerpts of the record. And 117 towards the end in D-2 is an innocuous statement, a response to a question, have you ever before filed a petition for this or any other alien? And the box is checked no. Now, her signature appears about, I would say, two inches below that, right after a bunch of warnings about penalties and certifications and stuff like that that tells anybody reading this is serious stuff, right? That is correct. And there's no dispute that's her signature, right? It was not. On appeal. We have to. There's no evidence. It's not her signature. The jury could have found it was her signature. The only thing. We have to treat this as she signed it. We did say that based on the case law that there weren't any exemplars, but I think that with the documents that the jury had, that it was fair for them to basically determine that was her signature and her signature. In the petition, the I-130 for her first husband, which is really the crux of the sufficiency of the evidence argument. And two things with regard to that is she had her first husband, Alam, and she married him in 2000. And in 2002, she had signed an I-130 for her first husband, for him to get a green card. Six months later, that was filed with the INS at the time it was INS. And there was nothing at trial. There was no evidence at trial to suggest that she even knew that that was filed. So with regard to whether she knowingly made a false statement or subscribed to a false statement in the subsequent 2009 I-130, there was no evidence to show that she actually knew that that first I-130 was filed, particularly since it was filed six months after she allegedly signed this document. You say allegedly. Well... Is there any... I mean, remember on appeal, there's no jury here. Again. You know the folks over there that are jurors. We have to take the facts in the light most favorable to the prosecution, right? And so she did sign it, right? It was filed. And the question is why can't a jury infer that if she signed the form and it gets filed to benefit somebody who is at least nominally her husband, that she must have filed it or must have been involved in filing or must have approved the filing of it? Isn't that what juries are for? That is, Your Honor. You can get on the stand and say, No, I didn't file it. I gave it, you know, you can say anything she wants to. But ultimately, why can't the jury infer that, in fact, she was the one who filed it? And why can't they infer from just the form and nothing else that she signed this form and that she knew what she was doing and had good reason to keep the immigration authorities in the dark about her earlier petition? Well, Your Honor, I think if it was just limited to that at trial, then that would have probably been fair for the jury. But what happened at trial was the court allowed, and that's the second issue on appeal, is the court allowed a lot of testimony regarding marriage fraud. I was going to ask you, as you started off with the sufficient evidence argument, which seems to me to be starting at the back end, because if you start with that, we have to take all evidence in the record. If you want to chip away at some of the stuff we can consider by deciding what's sufficiency, you have to start with the evidentiary arguments first and see if you can persuade us that some of the stuff should not come in. And I will... I mean, it just seems to me, right? I do, and we do tend to agree with the government that the issues are intertwined. And in this case, it appears that 403, rule of evidence 403, has been turned on its head. And it actually, as we argue, it gave the jury an alternate basis on which to convict. And so if there wasn't this 403, if there wasn't all this evidence and argument about marriage fraud that was introduced into the trial improperly, then there would be limited to this I-130 and whether she knowingly made these statements. Well, why was it improper? I mean, why wouldn't the argument be, look, she signs a form. She claims she hasn't signed an earlier similar form. And the reason she does that, would not release, because she knows that the other thing was a fraud. And so she doesn't want to admit to her own fraud. So the reason she does this false thing here, and the reason we should infer that she did it knowingly, is because the thing she did earlier was something she's ashamed of or something that she's afraid she might get into trouble over. If the I-130, the subsequent I-130, was a perfect document, meaning if there weren't any mistakes, and that was, by that you could see that that was intentional, I would agree with the court. But she does. Counsel, can I just ask a minute? I know that there is only one witness, live witness, at this hearing, isn't there, at the trial? That's correct, Your Honor. It was an HSI investigator. Right, the ICE agent. And so the only evidence that the jury had before it was his testimony plus the documentation. That's correct. Okay. And did counsel, for your client, argue what you're arguing today? That is, try to persuade the jury that that's one document full of mistakes and the like was not sufficient? Yes, Your Honor, I was trial counsel in this case, and I did argue that to the jury. The problem was I had to overcome this marriage fraud concept that was argued strongly by the government in closing argument, based on the limited information that the HSI investigator gave at trial, being the only witness, really undermined. Marriage fraud, you were objecting on the ground that it was prejudicial that they went into the fact that they got into intimate details of the marriage, that neither one was consummated? Correct, Your Honor, particularly because. And, again, did you argue that to the jury? Yes, Your Honor. Okay. But, again, we believe that the jury was swayed not by the evidence of any intent in the subsequent I-130, but because of the overriding concept of this marriage fraud, that she had engaged in two fraudulent marriages for which she was not charged. It was sort of a shortcut for the government. Now, nothing was being hidden. There were just a lot of mistakes. There were prior husbands listed in the petition, and there were just glaringly obvious mistakes, such as her second husband was born in the Siena Mayan. If that was the case, then they wouldn't even be filing this petition altogether. So if they had looked at, if the jury had only the I-130, and I was arguing all of the mistakes that were in there. Where is the first husband listed on the I-130? On Excerpt of Record 116, if you look on the left side, A11. Jahangir Alam, and it has the date the marriage ended. That's her first husband. Oh, I see. So it lists him as a former spouse, but not as a former petitioner. That's correct. I mean, she could have been married to a U.S. citizen before. And I'm not arguing. I just wasn't. The speech was so small, and the light here isn't. So I just wanted to make sure that I'm in the context. And, again, this I-130 was filed. Was there four or three objections? Remind me. I'm sorry. Was there four or three objections below? There was. We filed in limine pre-trial and argued that, and I argued five different basically categories of information, all related to what the government had said they were going to try to introduce at trial, and the judge overruled it without prejudice. We raised some objections at trial, and some got through in the process. You've got ten seconds. Do you want to go to zero? Well, second. Time flies when you're having fun. Indeed it does. Thank you, Your Honor. Good morning, Your Honors. Garth Backe, on behalf of the United States. May it please the Court. I really have a couple of points to touch on, and then I'll respond to any questions, but I believe. Well, let me just start you off, then, with the four or three arguments. What was the basis for bringing in all of this? I mean, it's highly prejudicial. It's highly invasive in terms of her own personal privacy and dignity. Why? What's the basis for bringing any of that stuff in? Your Honor, it is highly prejudicial, as is all incriminating evidence. This is part and parcel with the I-130. And if you look at the certification that she signed on her own, which she's charged for, it talks about that we are going to investigate your allegations that this is a true marital union. And so the I-130 is a document that is only allowed based on the relationship of a U.S. citizen to an alien beneficiary. And as was testified to and as is shown in that jurat, it has to be a lawful marriage, not one entered into with the point of evading the immigration laws. I mean, if you had charged her with marriage fraud, which you could have, I would be in complete agreement with you. But the elements of this particular offense that you charged her with are very narrow. It's just all we're looking at is that one little line, box check. Did she file a prior I-130? Yes or no? I mean, there's nothing else beyond that that you need to prove to get a conviction. Perhaps there's nothing else we do. But the government should not be limited when the evidence is relevant to important parts of the case. That's the question, isn't it? I mean, the point of 4-3 is you've gotten past the relevance objection. It is relevant or you wouldn't have a 4-3 objection, right? Yes, Your Honor. So the question of the 4-3 is whether or not the unfair prejudice from the evidence outweighs the probative value. So you've argued why it's probative. And there are two kinds of prejudice. There's fair prejudice, which is a prejudice that results from proving somebody guilty of the crime charged. But unfair prejudice is when they are proved guilty of something else and the jury will hold it against them and say, well, whether they're guilty or not of this particular crime, she committed marriage fraud, so let's convict her anyway because she has it coming. That's the calculus. And that's understood. Why isn't this, you know, the fact that she committed marriage fraud or, you know, did or did not have sexual relations with her first husband, why isn't that so toxic that it outweighs any probative value? It would have to substantially outweigh, Your Honor, and the government would submit that it doesn't. But there was a charge conference. This was litigated. The government by itself agreed not to use the words marriage fraud. The judge did make rulings and limited the government about what it could bring out. But these are points that go to knowledge. And we're here on appeal arguing knowledge. And it's more likely than not if someone has engaged in the same scheme, and this is a scheme, Your Honor. I mean, this is a woman who admittedly entered into two marriages because of what they were going to take care of her family. She went through the immigration process not once but twice. Well, but then charge her with marriage fraud. I mean, if you don't have confidence that you can prove that charge beyond a reasonable doubt, what business do you have dragging all that mud into this trial over a simple, did you file this power of forum charge? I just would disagree with it being mud. And, again, we didn't call it marriage fraud. But the I-130 is based on a legitimate marriage. I mean, that is the crux of it. And if it's not legitimate, that is highly relevant. And it goes to, again, modus operandi, goes to knowledge. So is the idea that if she engaged in a non-legitimate marriage the first time, then this is not a legitimate marriage either? This is sort of a bad act? For example, Your Honor, knowledge. Is it more likely than not, if she had gone through this process, first of all, she's in a sham marriage not once but twice. And this is her second application. She's already signed this exact document before. And so she has it. She sees it. The box is checked. Now, he's trying to argue that she didn't see it. Maybe it wasn't there at that time. You know, it's not appropriate for appeal. But when you say, wait, wait a minute, this wasn't a lawful marriage. She had gone through this process, again, in order to obtain money or beer. More likely than not that she knew it was there. And that is something that the government, I believe, is capable of arguing. As was presented in our brief, though, none of that was necessary to obtain a conviction against her. I think the government isolated the evidence when it was addressing its sufficiency of the argument, proximity, the jurat, the signature. It's the province of the jury to compare signatures. And there's other information on the form which can lead the jury to conclude that there is knowledge. But, again, the government does not have to limit itself when it is admissible and it's permissible. And this type of evidence is regularly admitted in these types of cases. Let's say the evidence of the prior marriage had been excluded. Or let's say we disregarded an appeal for whatever reason. Is the mere signature on the form by itself enough to support an inference of knowledge? Could the jury just say she signed it? Assuming they resolve any doubts about her signature, let's say they say, yes, it's her signature. Would that be enough to support a finding of knowledge which would then support a verdict of guilty? Arguably, Your Honor, in the government-cited case law, when you sign a tax return in your signature, you are there presumed to have knowledge of the contents. But the government isn't relying on that. There is additional evidence above and beyond that. We don't want to rely on that. But it is highly important, the proximity. And so maybe a fair comparison is to the case law regarding possession of guns. So putting aside the prior marriage, what other evidence is there of supporting knowledge? Your Honor, again, the proximity of the signature to the question with the juror in the middle of it. Her signature was on the 19th. The document was filed on the 20th. The attorney's signature is before her signature. These are all showing that the document was filled out when she signed it. And so there's also biographical information on the first page. This is her Social Security number, her address. There are all sorts of errors, obvious errors, on that second form. Your Honor, those are theories and hypotheses that were argued to the jury and rejected and are not appropriate on appeal to reverse. And that is a takeaway. The jury could have found that. It was offered the opportunity and it rejected it. Well, let me ask you this about the first marriage. Assume that that first marriage was completely legit. Yes, Your Honor. She's still guilty, right? Yes, Your Honor. So that's what I mean. So whether that first marriage was a sham or not, it just seems to me you've just conceded. It's not relevant to you proving her guilt on this charge. I disagree. Again, I think the government is not under the obligation to minimize its evidence when it has case law and good arguments that this is relevant and it goes, it's either inextricably intertwined or 404B evidence, which is a rule of inclusion. And so, yes, I guess the government in hindsight could have made a safer play and not gone into it, but it did. And it was legitimate and it was fine and it is supported by the case law. So, yes, the conviction would have been fine without it, but it is not error for the government to have elicited. Can I ask you about the sentencing enhancement that she got? Yes, Your Honor. It seems to me a very thin case to say that she did this for profit, but I would just like to hear your defense of the district court's imposition of that. A couple things, Your Honor. It's his burden to come forward and prove that it was not for profit. Number two, she admitted that she was paid for in beer. She didn't say she was paid for in beer. What she said was, I entered into this marriage because he told me he would take care of me and my family. And that would be profit, Your Honor. That's what we would submit. I mean, in some cultures, I wouldn't call that profit. I understood, Your Honor. But if you expand upon that, yes, that could be normal and a sign in a regular marriage. But when you look outside of that, and, again, we're in sentencing at this point in time where we're not under any, you know, the admissibility is much greater, but then we can take into account the sham nature of it and that she did enter into this strictly to be compensated or have her family taken care of. I mean, she did not have sex with these men. The first husband left her right away after he got his green card. And so it was clearly for profit. And it's her intent. It's not whether she got it, but she did enter into this marriage for profit. And the government, again, thinks that that evidence is clear. But more importantly, it was his burden to prove, and he did not. Would you yield your 20 seconds, Your Honor? I don't believe I have anything further, Your Honor. Thank you. Thank you. You had 10 seconds. You got 20 seconds from your opponent. We'll make it a full minute. What the heck? I was hoping I was done. If I could address the profit. No, you do not have to take a bottle. It's always safe not to take a bottle. But if you wish to take a minute, go ahead. Thank you, Your Honor. I would like to address the profit issue since it came up. And I think that if you look at the commentary, that is really more addressed to situations where there's presumed profit, trafficking of people or documents. And it actually carves out things that are done for personal reasons. And in this case, I don't think the court under these facts should presume profit motive. And, yes, the burden generally is. He's not actually marrying him for the sort of normal, you know, reasons people have marriage, you know, to actually have a life together. And he's taking care of her. Why isn't that profit? Why isn't it like handing over cash and saying, here's your rent money or here's your food money and you go out. Why isn't that profit? Well, aren't all marriages entered into to some extent to take, you know, with the promise that I'm going to take care of you? I mean, it's the vows at marriage, you know. Well, yes, there are lots of things involved in marriage. And if you excerpt any one of them, then they look very different than if you sort of buy the whole package. So if it's just sex, it becomes prostitution if that's all you're getting. But, you know, if it is just, oh, he's going to pay for the rent, then that's cash, that's not a life together. There's a whole package of relationships and financial and personal involved in being in marriage. And you can't say, oh, this is just like marriage because people in the marriage support each other. We don't have other stuff connected with marriage. And why isn't that just plain old, you know, she did it for cash? Not all marriages are the same. And this court has said in Damon v. Ashcroft that we won't look at different types of marriages and try to pigeonhole certain marriages and say this is marriage. The judge here could look at this marriage and say this was not a situation where husband and wife are, for whatever reason, unable to have sexual relations, you know, age, you know, whatever, and they have a life together. The judge could look at the situation and say this is a shared marriage. There's no marriage here at all. And the reason the guy is handing over money for living expenses is that he is paying for her having signed the form. Couldn't the judge come to that conclusion? Not in this case because there wasn't any living expenses. What the judge found was there was beer. There was a few cases of beer from time to time. And she says because the defendant has a drinking problem that that was paying. That's what the judge found. How does the fact that he left her as soon as he got the green card, does that cast enough doubt on whether she entered into it with the intent of actually living with him and that it was more of a nature I'll do this for you and you're my annuity, regardless if we continue to live together? Are we talking about the second marriage, Your Honor? Right. Right. I'm not sure if there was any testimony at trial about when the second husband left, just that he wasn't there when HIS started its investigation. Well, even with the first marriage. In other words, that she was going through this modus operandi with the notion that if she would agree to marry a fellow economic benefit, regardless of whether the person involved was going to stay with her. I just have a hard time seeing beer, a few cases of beer. I understand. But would you, would that follow? If that were the case, would that strike you as profit? It's not. Again, I think Damon B. Ashcroft answered this, and it's not my relationship. And I don't think that the court can, again, say what types of traditional relationships would not violate this. I'm sorry. I don't understand. You say it's just a few cases of beer. Is there something special about beer? No. You know, a case of beer, I mean, depending on the brand, you know, it's about $20. And a few cases of beer could be $80 or $100. So let's say instead of a few cases of beer, he had handed her $100. Would that be not profit to you? I mean, this is to her and her cousin over several years of them being married, prior to and after this application for a green card. What relationship would you not have? What is it? People don't just hand each other money. I mean, you know, they could go on the street and hand each other money. I mean, the fact that the government can prove, you know, only a few cases of beer doesn't mean that's all there was. But why is not enough? You know, it's money that he hands over, goods that he hands over, that he pays money for, in the context of something that the district court finds is not a real marriage. I just hope that all marriages are— Is it the small amount of money involved? Is it the fact that it's liquid? Is it the fact that it's in bottles? What is it about this that makes it not profit? It doesn't seem like it's a quid pro quo. It seems like it's spread out over time. He did it out of the goodness of his heart. I'm sorry, Your Honor? He did it out of the goodness of his heart. I think that could be argued, sure. But the district judge didn't have to buy it, right? The district judge could look at it and say, no, he didn't do it out of the goodness of his heart. He did it because he owed her this because she signed a form for him. And that's what the judge found, but I think that that was— Clear error? I don't think that there was. I think it was clearly a ruin, yes. Thank you. Thank you. Thank you. Thank you, Your Honor. Thank you. Thank you.
judges: Kozinski, Fisher, Watford